1

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
Seattle Division

3

4

5

6

7

8

9

10

11

12

| | |
|---|---|
| RUSSELL JOHNSON; JENNY DONNELLY; HER VOICE MOVEMENT, INC., d/b/a TETELESTAI MINISTRIES; ROBERT DONNELLY; ROSS JOHNSTON;<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE, WASHINGTON; BRUCE HARRELL, in his official capacity as Mayor of the City of Seattle, Washington; SHON BARNES, in his official capacity as Chief of Police for the Seattle Police Department;<br><br>Defendants. | Case No. _____ **25-1874**<br><br>**VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, DECLARATORY RELIEF, AND DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

13

14

15

16

17

18

19

20

21

22

23

24

i

VERIFIED COMPLAINT
CASE NO. _____ 28-1874

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

*"Today's far-right rally was held here for this very reason – to provoke a reaction by promoting beliefs that are inherently opposed to our city's values."*[1]

For their VERIFIED COMPLAINT for Preliminary and Permanent Injunction, Declaratory Relief, and Damages against Defendants, CITY OF SEATTLE, WASHINGTON; BRUCE HARRELL, in his official capacity as Mayor of the City of Seattle, Washington; and SHON BARNES, in his official capacity as Chief of Police for the Seattle Police Department (collectively "the City" or "Defendants"), Plaintiffs, RUSSELL JOHNSON; JENNY DONNELLY; HER VOICE MOVEMENT, INC.; ROBERT DONNELLY; and ROSS JOHNSTON ("Plaintiffs" or "MAYDAY"), allege and aver as follows:

## INTRODUCTION

1.    MAYDAY USA ("MayDay") is a nationwide revival event and demonstration dedicated to turning America back to God. Plaintiffs hosted MAYDAY USA revivals in New York, New York; Miami, Florida; Houston, Texas; Los Angeles, California; and Seattle, Washington, during the month of May.

2.    At each event, Christians gathered on public streets to engage in constitutionally protected speech, expression, and religious exercise, worship, speak about Jesus, baptize new believers, advocate against abortion, speak against human trafficking, and shed light on other theological crises facing the nation.

3.    The purpose of the planned five-city tour was to cry "mayday" for America, stand for the Nation's children, advocate for the restoration of the family

---

[1] Press Release, Office of the Mayor, *Mayor Harrell Statement on Extreme Right-Wing Rally at Cal Anderson Park* (May 24, 2025), *available at* https://harrell.seattle.gov/2025/05/24/mayor-harrell-statement-on-extreme-right-wing-rally-at-cal-anderson-park/. A true and correct copy of Mayor Harrell's Press Release is attached hereto as EXHIBIT A and incorporated herein.

1

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

unit as Biblically ordained, and to proclaim the Gospel of Jesus Christ to all who would hear their speech, expression, and religious exercise.

4.    As it has successfully done in three prior major cities throughout America, Plaintiffs applied to have a permit to host a MayDay event on Pike Street in downtown Seattle.

5.    Pike Street is a public street and traditional public forum, home to frequent and reoccurring parades, protests, and other constitutionally protected expressive activity on topics espoused from myriad viewpoints.

6.    MayDay requested to hold their event on Pike Street but was informed that because of neighborhood opposition to the planned event, the permit would be denied.

7.    MayDay was required to obtain community support for its requested event, and also required to obtain the permission of nongovernment entities given veto power over MayDay's religious speech, expression, and exercise.

8.    After its requested permit for Pike Street was denied, the City suggested that Plaintiffs host their event at a City park, and the City provided a list of options, including Cal Anderson Park.

9.    Plaintiffs did not desire to use Cal Anderson Park but did so at the urging of City officials and the City's grant of a permit for that location.

10.    Despite being forced to host their event at Cal Anderson Park, it was precisely because Plaintiffs used that location that Mayor Harrell unconscionably blamed Plaintiffs for the violent assaults and attacks perpetrated against them by violent agitators.

11.    In fact, Mayor Harrell stated that Plaintiffs were to blame for the violence they experienced because they "picked" Cal Anderson Park "to provoke a

2

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

reaction" because the park is "in the heart of Seattle's most prominent LGBTQ+ neighborhood." Ex. A at 1.

12.    Mayor Harrell's callous statements are particularly disturbing given the violent assaults Plaintiffs suffered at the hands of agitators from whom Seattle had the duty to protect Plaintiffs.

13.    Violent agitators threw urine filled balloons at Plaintiffs, engaged in obscene behavior and masturbation in front of the innocent minor children in attendance at Plaintiffs event, threatened Plaintiffs and their volunteers and attendees with death and serious bodily harm for engaging in their protected activity, hurled verbal threats at Plaintiffs, destroyed or damaged Plaintiffs' event equipment, and otherwise engaged in physical threats and actual violence.

14.    Did the Mayor condemn the violence? No – he blamed the victim, and he did so solely because of the religious views, speech, expression, and exercise.

15.    The Mayor was explicit and unequivocal: Plaintiffs were to blame because they are "extreme right-wing" individuals who are "opposed to our city's values" and hosted their planned event to "provoke a reaction." Ex. A.

16.    Mayor Harrell said the violence directed at Plaintiffs was  the result of their "extreme right-wing . . . effort to attack trans and LGBTQ+ communities." Ex. A.

17.    Of course, none of this is true, and it is beside the point. The First Amendment protects Plaintiffs' right to peacefully engage in protected religious speech, expression, and exercise and does not permit the City to terminate Plaintiffs' constitutional rights on the basis of listener reaction. That is precisely what happened.

18.    MayDay's voice was silenced by the City's weaponization of the unbridled discretion granted to it under its permitting scheme, and Defendants

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

exercised their unconstitutionally unbridled discretion to target, censor, and unconstitutionally restrict MayDay's religious beliefs, expression, and speech.

19.    In other words, Defendants wielded their permitting scheme to unconstitutionally condition the exercise of First Amendment rights on a show of hands and conformity with what the Mayor described as the "city's values." But, as a matter of black letter law, MayDay's right to free speech, free assembly, and religious exercise "may not be submitted to vote; they depend on the outcome of no elections." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943). Simply put, "majority votes do not, as such, defeat First Amendment protections." *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 394 (2000).

20.    The City ignored these requirements and demanded MayDay conform its speech and constitutionally protected expression and religious exercise to only those views the City deems appropriate.

21.    The City's permitting scheme thus enshrined an unconstitutional heckler's veto upon MayDay and its expressive activities.

22.    By virtue of Defendants' unconstitutional prior restraint scheme and the exercise of its unfettered discretion to shut down MayDay's approved and permitted activity its permitting application, Plaintiffs suffered irreparable First Amendment injury and damages.

## **PARTIES**

23.    Plaintiff, RUSSELL JOHNSON, is the Lead Pastor of the Pursuit, a Chrisitan church in Washington. In 2014, Johnson ended a career in politics to submit his life to God and pursue full time ministry. Initially, Johnson and his wife, Marija, led a church out of a run-down barn. Eventually, the Lord provided the Johnsons with a former department store that they have since transformed into a new church, preschool, and outreach center. The Pursuit, under Johnson's charge,

4

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

now operates these organizations, along with churches in Snohomish, Kirkland, and Seattle, Washington. Johnson served as one of the organizers and leaders of MAYDAY USA, including the planned but denied event in Seattle.

24.    Plaintiff, JENNY DONNELLY, is a mother, minister, president and founder of Her Voice Movement, Inc., and one of several leaders of MAYDAY USA. In 2011, Mrs. Donnelly received a prophetic word that God placed a prayer movement inside of her. When she received this word, she was leading prayer groups from her home. Those prayer groups formed into a team of powerfully faithful women that performed healings and delivered miracles. These women formed Tetelestai Ministries. In 2016, Mrs. Donnelly began planning national gatherings of Christian women. This new ministry was incorporated as Her Voice Movement, Inc. Several years later, as Mrs. Donnelly watched America fall perpetually deeper into sin, Mrs. Donnelly organized MAYDAY USA, a nationwide revival event and demonstration that stretched from Miami to New York to Seattle to Los Angeles. Her desire was to cover the four corners of the United States with the Gospel of Jesus Christ and proclaim truth over the issues of the culture today. MAYDAY USA allows Christians to gather on public streets and speak about Jesus, advocate against abortion, speak out against human trafficking, and shed light on other theological crises facing the nation.

25.    Plaintiff, HER VOICE MOVEMENT, INC., is a Christian non-profit founded by Jenny Donnelly. This ministry assisted in the organization and execution of MAYDAY USA, including the planned but denied event in Seattle, and served as one of the event's sponsors.

26.    Plaintiff, ROBERT DONNELLY, is a Christian minister and leader, father, and husband of Jenny Donnelly. Mr. Donnelly served as one of the organizers and leaders of MAYDAY USA, including the planned but denied event in Seattle.

5

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

27.     Plaintiff, ROSS JOHNSTON, is a Christian minister, leader, evangelist, and revivalist. Johnston was born by artificial insemination and raised by two women who identify as lesbians. At fifteen years old, Johnston was filled with the Holy Spirit and surrendered his life to Jesus. In 2020, Johnston resigned from his job and pursued full-time ministry. He founded Ross Johnston Ministries, a Christian non-profit ministry. Johnston served as one of the organizers and leaders of MAYDAY USA, including the planned but denied event in Seattle.

28.     Defendant, CITY OF SEATTLE, is an incorporated municipality with authority to sue and be sued and is governed by a laws, ordinances, rules, policies, customs, and practices that require the organizers of planned assemblies and speaking events to receive a permit prior to constitutionally protected demonstrations.

29.     Defendant, BRUCE HARRELL, is the Mayor of the City of Seattle and is its chief executive responsible for the implementation, enforcement, and execution of the City's ordinances, laws, customs, policies, and procedures, including those relating to MayDay's permit applications. Harrell is sued in his official capacity.

30.     Defendant, SHON BARNES, is the Seattle Police Department's Chief of Police. As the head and general manager of the SPD, the Chief Barnes is responsible for the planning, efficient administration, and operation of the SPD and is directly responsible for the ultimate enforcement and application of the City's ordinances, policies, and procedures, including the enforcement of the parade and assembly ordinances, policies, and procedures at issue in this case. Chief Barnes is sued in his official capacity.

## JURISDICTION AND VENUE

31.     This action arises under the First and Fourteenth Amendments to the United States Constitution, and is brought under 42 U.S.C. §1983.

6

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

32.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

33.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because this action arises in the district in which all defendants reside and is the district in which a substantial part of the events and omissions giving rise to the claim occurred.

34.    This Court has the authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Rule 57, Federal Rules of Civil Procedure, and the requested injunctive relief under 28 U.S.C. § 2202 and Rule 65, Federal Rules of Civil Procedure.

35.    This Court has the authority to award the requested damages pursuant to 42 U.S.C. §1983 for the deprivation of rights, privileges, and immunities in an action at law.

36.    This Court has the authority to award the requested costs and attorney's fees under 42 U.S.C. §1988.

## GENERAL ALLEGATIONS

### A.    Plaintiffs' Planned MayDay Event.

37.    On October 19, 2023, Jenny Donnelly and Shawna Danberg started the #dontmesswithourkids podcast with the intention of turning America back to God.

38.    The #dontmesswithourkids podcast immediately began planning public demonstrations that provided Christians an opportunity to worship in their communities, engage in protected expression, and speak on matters of public importance in the public arena. In the first episode of the podcast, the Christian duo announced that they would be praying, fasting, and standing in Washington, D.C., to promote turning America back to God.

VERIFIED COMPLAINT
CASE No. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

39.    The #dontmesswithourkids community grew and joined hands with several other ministries interested in this same goal of turning America back to God.

40.    On January 22, 2025, Jenny Donnelly, Her Voice Movement, Inc. ("HVM"), Robert Donnelly, Ross Johnston, Ross Johnston Ministries, and Russell Johnson announced MAYDAY USA on Mrs. Donnelly's YouTube Channel.

41.    MAYDAY USA is a national Christian revival that hosted assemblies, events, demonstrations, and religious worship in New York, New York; Miami, Florida; Houston, Texas; and Seattle, Washinton, and attempted to do so in Los Angeles, California, during the month of May.

42.    Each demonstration consisted of prayer, worship, and religious speech and expression in the traditional public forum of the streets, parks, and sidewalks.

43.    The demonstrations served as an opportunity for Christians to come together and cry "Mayday!" This cry for help promoted the urgent need for a nationwide Christian revival. The urgency stems from the nationwide erosion of traditional family values, the continual corruption of children, promotion of sin, and attempts to Diminish Jesus's role in society.

44.    To prepare for this series of demonstrations, Plaintiffs hosted "pre-rallies" and planning events with local Christian ministries in Houston, Texas; Miami, Florida; Naples, Florida; New York, New York; Porland, Oregon; Seattle, Washington; Spokane, Washington; and Los Angeles, California. These "pre-rallies" took place from January 25, 2025, to March 5, 2025. Each event occurred without incident.

45.    The MAYDAY USA tour began in New York, New York, on May 3, 2025, was planned to include an event in Seattle, and intended to culminate in the final event on Hollywood Boulevard in Los Angeles, California, on May 31, 2025.

8

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

46.    Due to Defendants' unconstitutional permitting scheme and their application of that permitting scheme, Plaintiffs' planned event in Seattle was unconstitutionally shut down, and Plaintiffs were violently attacked and assaulted while the City's police stood idly by or left them altogether unprotected.

**B.    Defendants' Permitting Scheme For Expressive Events.**

47.    In order to host any event on streets, sidewalks, or public parks in the City of Seattle, applicants are required to apply for and be granted a permit. Seattle Ordinance §15.52.040.

48.    Specifically, Seattle's Special Event Permitting Scheme states: "A special event permit or authorization from the Special Events Committee is required for any special event, as defined in this Chapter 15.52." Seattle Ordinance §15.52.040.A.

49.    Seattle's Special Event Permitting Scheme provides certain administrative conditions that may be placed on the grant of a Special Event permits, including "crowd control, traffic control, safety, and security;" compliance with applicable laws and regulations; coordination with first responders, including police, fire, and emergency personnel; and other health related considerations. Seattle Ordinance §15.52.050.A-G.

50.    In addition, Seattle's Special Event Permitting Scheme requires that the Special Events Committee consider

> anticipated impacts of the event based on an assessment of the event, including size, scope, complexity, location, and history; the event's or event organizer's successful implementation of conditions included in previous permits; the public's access to public places and public services; the impact on frequently-utilized special event locations or routes; and the impact on neighborhoods.

*Id.*, §15.52.050.

9

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1      51.    Seattle's Special Event Permitting Scheme purports to limit that ability

2   of the Special Events Committee to consider the "programming content of the event

3   or message that the proposed event may convey." *Id.*

4      52.    Seattle's Special Event Permitting Scheme outlines the reasons a permit

5   may be denied and requires that any denial be accompanied by a written explanation

6   of the reasons for the denial. Seattle Ordinance §15.52.060.B.

7      53.    Seattle's Special Event Permitting Scheme states that the Special

8   Events Committee may revoke a permit on written notice to the applicant if the

9   applicant (1) "has made misstatement of a material fact; the applicant has failed to

10  fulfill a term or condition of the permit in a timely manner; or the check submitted

11  by an applicant in payment of the fee for a permit has been dishonored;" (2) the

12  applicant requests cancellation or cancels the event; or (3) "[a]n emergency or

13  supervening occurrence requires the cancellation or termination of the event in order

14  to protect the public health or safety." Seattle Ordinance §15.52.060.C.

15     54.    Seattle's Special Event Permitting Scheme authorizes the imposition of

16  fees associated with the requested permit. Seattle Ordinance §15.52.070.

17     55.    Though purporting to limit the discretion of City officials concerning

18  applications for a permit, Seattle's Special Event Permitting Scheme vests unbridled

19  discretion in the hands of City officials and enforcement personnel to deny a permit

20  on the basis of the views espoused by the applicant; to shut down a permitted event

21  on the basis of the views espoused at the event; and to shut down a permitted event

22  on the basis of listener reaction.

23     56.    As part of the permit process, the City requires applicants to inform

24  individuals and organizations in the area of the proposed event and provide contact

25  information of City officials to whom neighborhood organizations can submit

26  objections and comments.

27
    VERIFIED COMPLAINT
    CASE NO. _____

28                                              SNYDER LAW FIRM, LLC
                                                15306 Main St. E, Ste. B
                                                Sumner, WA 98390
                                                (253) 863-3889

57.    No standards in the permitting scheme restrict the City's ability to deny a permit based on concerns of the neighborhood individuals and organizations to whom notice is provided and who might object to them.

58.    As part of the permit process, the City also requires applicants to inform non-governmental entities tasked with reviewing permit applications for downtown events and other spaces in Seattle to obtain private approval for their event.

59.    No standards in the permitting scheme restrict the City's ability to deny a permit based on concerns of the nongovernmental organizations (*e.g.*, Seattle Downtown Association; Friends of the Waterfront) from whom applicants must obtain approval.

60.    No standards in the permitting scheme guide the nongovernmental organizations from whom approval must be obtained in the criteria by which it can approve or disapprove a requested permit.

**C.    Defendants' Set the Location of MayDay's Event.**

61.    On February 5, 2025, Plaintiffs applied for a permit to host the MAYDAY USA event in Seattle, submitting the required application to host an event on Pike Street in downtown Seattle. A true and correct copy of the email communications between Plaintiffs' representative and the City are attached hereto as EXHIBIT B and incorporated herein.

62.    Plaintiffs requested this location due to its prominence and the ability to reach Plaintiffs intended audience most effectively. Ex. B.

63.    On February 11, after not hearing anything from the City about the application, Plaintiffs reached out to check in on the status of the permit application. Ex. B.

11

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

64.    The City responded to Plaintiffs informing them that it could take 10 days for a full review of the application, but that the City would respond to Plaintiffs about the application.

65.    The City also responded saying that it was "liaising with some of our partner departments who're involved with programming the area" Plaintiffs had proposed for the event, and that the City would share updates when it had "a bit more clarity on the best way to proceed." Ex. B at 4.

66.    On February 26, after Plaintiffs had again attempted to gain an answer concerning their permit application, the City informed Plaintiffs that the City did not believe Plaintiffs' requested location was acceptable for the planned event. Ex. B at 3.

67.    The City claimed it had looked at "notes from last year's March for Jesus event that was also hosted on Pike St between 1st Ave. & 2nd Ave, the Special Events Office believes that location *is not ideal for you worship event*." Ex. B at 3 (emphasis added).

68.    One of the reasons that the City said Plaintiffs' requested location was not ideal was because businesses had objections to the event taking place on Pike Street and that "insufficient neighborhood notifications" were issued for the last event. Ex. B at 3.

69.    The City suggested alternative locations for the event to avoid the area businesses objecting to Plaintiffs' event. It stated, "We would like to encourage you to consider utilizing Westlake Park for your community worship service instead." Ex. B at 3.

70.    The City's Special Events Office then passed Plaintiffs off to the Downtown Seattle Association (a nongovernment entity) for a determination of the requisite permit, said that the Special Events Office would consider connecting

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

Plaintiffs with the Seattle Parks Department if other venues were available, and also suggested Plaintiffs contact Friends of Waterfront Park (another nongovernment, nonprofit organization that rents space for private events) to see if space was available. Ex. B at 3.

71.    The unmistakable import of Defendants' passing Plaintiffs around to other potential venues was to suggest Defendants did not want Plaintiffs' "worship service" (*i.e.*, religious event) to take place on the requested location of Pike Street.

72.    Defendants' communications with Plaintiffs made clear that Defendants' objections were based on the March for Jesus (*i.e.*, religious event) that took place on Pike Street the year before and the objections from the community to that religious event and the viewpoints it espoused.

73.    Defendants' communications also made clear that the City required Plaintiffs to have the approval of their message from nongovernment actors in the areas where the event was proposed to take place.

74.    Plaintiffs attempted to inform the City that the March for Jesus event was a different organization and a different event than what Plaintiffs were requesting here, and that the event should not be rejected because of past religious events. Ex. B at 2.

75.    On March 4, Plaintiffs again contacted the City to check on the status of the permit application.

76.    The City responded the next day saying that it was still working with a nongovernment organization, Downtown Seattle Association, to determine whether Plaintiffs' requested event was permissible. Ex. B at 2.

77.    The City informed Plaintiffs that the Downtown Seattle Association was "just starting to stand up programming policies" for the area of Pike Street in which Plaintiffs had requested to host their event. Ex. B at 2.

13

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

78.    The unmistakable import of the City's statements was that Plaintiffs were required to obtain the approval of private actors for the message they desired to express on Pike Street.

79.    In that same communication, the City informed Plaintiffs that they should still consider alternative locations to Pike Street to avoid the objections businesses had to religious events last year "in case Pike St is not the best fit." Ex. B at 2.

80.    The City also said that should Pike Street be available, it would need to address "issues that occurred last year" at the previous religious event. Ex. B at 2.

81.    Plaintiffs informed the City that they would do whatever was necessary to ensure that the sidewalks were available for traffic to businesses. Ex. B at 2.

82.    On March 7, 2025, the City informed Plaintiffs that they would not be permitted to use Pike Street, and that Plaintiffs needed to find an alternate location.

83.    Specifically, the City stated:

Our office connected with the Downtown Seattle Association and other partner agencies today, and we recommend that you find an alternate location for the proposed Mayday worship event on May 24, please.

The capabilities of Pike St unfortunately don't match up appropriately to successfully facilitate what's been proposed (including available space to safely facilitate the expected number of attendees while also maintaining public access to all businesses along the sidewalks flanking the roadway).

Please connect with Claire Pinger from the Downtown Seattle Association (cc'd here) – it's quite possible that DSA can help find

14

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

another location (e.g. Westlake Park, Occidental Square Park) that could better accommodate your proposed activity.

I would also suggest considering other Seattle Parks locations – when I connected with the Parks Department last, Cal Anderson Park on Capitol Hill and South Lake Union Park on the south side of South Lake Union were both available. You can also reach out to parkusepermits@seattle.gov to inquire about those parks or other parks.

Thank you for your understanding.

Ex. B at 2.

84.    Plaintiffs responded to the City, stating that they would do whatever is necessary to ensure there was "no impact on the businesses or public" but desired to host their event at Pike Street as initially requested. Ex. B at 2.

85.    On March 14, the City officially denied Plaintiffs' permit application to host an event on Pike Street, *and the City made clear that past events were the premise of the denial.* Ex. B at 1.

86.    Specifically, the City noted:

Your proposed use of Pike St between 1st & 2nd Ave in Seattle is being denied by the Special Events Committee due to the size and scope of the proposed event being too large to be safely accommodated at the proposed location. There is not ample space to safely facilitate the expected number of attendees while also maintaining public access through the space and access to all businesses along the block. Additionally, similar events at this location have been unsuccessful due to planning issues and community disruption.

The Special Events Office, Special Events Committee, and Downtown Seattle Association support community events and have

15

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

suggested other locations which would be better suited for this proposed event. You will need to find another location. I would again recommend connecting with the Parks Department to find an alternate location. They can be reached via parkusepermits@seattle.gov.

Ex. B at 1.

87.    On April 2, Plaintiffs informed the City's Special Events office that—despite being denied a permit for their requested location—Plaintiffs had attempted to secure a parks permit to no avail. Ex. B at 1.

88.    On April 8, Plaintiffs received a permit from the Seattle Parks Department to host an event at Cal Anderson Park. A true and correct copy of the Permit for Cal Anderson Park is attached hereto as EXHIBIT C and incorporated herein.

89.    The permit approved Plaintiffs to host the MAYDAY USA event from May 24 at 7:00 AM to 10:00 PM at Cal Anderson Park. Ex. C at 1.

90.    The permit noted that Plaintiffs were permitted to have amplified sound at certain time periods, allowed for stages and sound, and stated that the event was approved for "a worship and prayer event." Ex. C at 4.

91.    The permit stated that Seattle Parks and Recreation may revoke a permit and/or stop a use in progress Plaintiffs did not comply with applicable rules, regulations, laws, ordinances, or orders; but did not state any basis upon which Plaintiffs' event could be shut down based on listener reaction to the views, speech, expression, or religious exercise taking place at Plaintiffs' event. Ex. D at 8.

**D.    The Violent Assault on Plaintiffs' Planned and Permitted Event, and The City's Termination of Plaintiffs' Event.**

92.    On May 24, Plaintiffs complied with all applicable rules and laws to engage in the permitted event at Cal Anderson Park.

16

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1
2
3

93.    As a result of Plaintiffs' event, a large group of protestors came to the park to agitate, disrupt, and assault Plaintiffs for the views, message, and content of their event.

4
5
6
7

94.    At 3:15 PM, shortly after Plaintiffs had begun the event, Plaintiff Jenny Donnelly and other event organizers were approached by Lieutenant Larry Longley and told that the police were going to require Plaintiffs to shut down the event because of violent protestors who police said they could no longer control.

8
9
10

95.    Plaintiffs were asked to speak to a Seattle police captain who was on site, and Plaintiffs requested that their event be able to continue as it was permitted to do.

11
12
13

96.    Police informed Plaintiffs that because of the violence and protestors, police would be forced to revoke their permit if Plaintiffs did not agree to shut down the event early.

14
15
16

97.    Plaintiffs inquired as to what government officials had the authority to revoke their permit, and Plaintiffs were informed the Mayor was the only official with authority to revoke a permit.

17
18
19
20
21
22

98.    Plaintiffs inquired as to what police believed was the basis for the violent protests and were informed that the protestors viewed Cal Anderson Park as "their park" and that the park "belongs only to the LGBTQ+ community." Additionally, Plaintiffs were informed by the protestors that some members of the community had "made" the violent antifa protestors engage in their violent assaults because Plaintiffs "had no right to be in their park."

23
24
25
26

99.    As Plaintiffs' event was taking place, two protestors attacked the event's stage, ripped down the fabric banners that were attached to the stage, kicked over equipment that was being used on the stage, and otherwise caused damage to the event's equipment.

27
28

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

100.    One component of Plaintiffs' event included a free haircutting station for underprivileged community youth. At that location, a female protestor stripped down to thong underwear and begin "twerking" with her exposed buttocks facing the minor children. The same protestor also began masturbating in front of minor children at the same location. The same protestor was cursing at the children and event staff while engaged in the obscene acts.

101.    Other protestors assaulted Plaintiffs and their attendees and staff by throwing urine-filled water balloons at them.

102.    Other protestors sprayed Plaintiffs and their attendees and staff with pepper spray and tear gas. Some of Plaintiffs' volunteers and attendees had to seek refuge in nearby hotels because of nausea and vomiting from the pepper spray and tear gas.

103.    Other protestors harassed and harangued Plaintiffs and their attendees and volunteers with curse words and violent threats.

104.    Several protestors identifying as antifa who wore Kevlar vests and gas masks and carried gas cannisters on their utility belts harassed Plaintiffs and event attendees and volunteers, closely marching around the children's haircutting station.

105.    At one point during the event, Plaintiffs and their attendees and volunteers were told that one of the violent antifa protestors was brandishing a weapon. Plaintiffs' volunteers at the prayer tent were forced to make all volunteers lay down on the ground to protect themselves from the violent group.

106.    The violent antifa protestors rioted so close to the prayer tent that Plaintiffs were forced to evacuate the tent out of fear for their safety.

107.    Several of Plaintiffs' volunteer hairdressers that were providing haircutting services for underprivileged minors were forced to leave the event because of violent threats being made against them.

18

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

108.    After police instructed Plaintiffs to shut down the event, Plaintiffs and many of their event volunteers had to be escorted to their vehicles by security so they would not be assaulted by the violent antifa protestors.

109.    Many of the children at the event were forced to be evacuated due to the violent threats and assaults taking place at Plaintiffs' event.

110.    After all of these assaults, police officers told Plaintiffs that they needed to shut down their event early due to the violence.

111.    As part of their reasons, the police told Plaintiffs that there was a shift change for police about to occur, so the police that were on site were leaving. Police also told Plaintiffs that they would not be sending any further police officers to the event because of manpower, overtime, and budget issues. Because of that, police reiterated to Plaintiffs that the event needed to be shut down.

112.    After the police left, Plaintiffs were trying to break down the stage and other event materials when 10-15 violent antifa protestors continued harassing and assaulting them. The violent assaulters threw full water bottles at Plaintiffs and their volunteers, attacked them with silly string, and ripped down other banners that Plaintiffs had as part of their event.

113.    The antifa protestors also continued harassing Plaintiffs and their volunteers by screaming obscenities and profanity and threats towards them.

114.    The antifa protestors also assaulted Plaintiffs' production team and damaged the production equipment that Plaintiffs were attempting to break down after the police left the event.

**E.    Mayor Harrell Blames Violence on MayDay.**

115.    After Plaintiffs were violently assaulted at Cal Anderson Park for peacefully engaging in their constitutionally protected speech, expression, and

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

religious exercise, Mayor Harrell blamed MayDay for the violence perpetrated against them. *See* Exhibit A.

116.    On May 24, 2025, Mayor Harrell issued a press release stating that Plaintiffs peaceful event was an "Extreme Right-Wing Rally" and that Plaintiffs were responsible for the violence perpetrated against them because of their constitutionally protected views.

117.    Mayor Harrell's Press Release stated, "Seattle is proud of our reputation as a welcoming, inclusive city for LGBTQ+ communities, and we stand with our trans neighbors when they face bigotry and injustice. Today's far-right rally was held here for this very reason – to provoke a reaction by promoting beliefs that are inherently opposed to our city's values, in the heart of Seattle's most prominent LGBTQ+ neighborhood." Ex. A at 1.

118.    Despite Plaintiffs' stated desire to express their religious views and peaceful advocate for children and the family from a religious standpoint, Mayor Harrell condemned such religious views as questioning the humanity of certain groups.

119.    Mayor Harrell also directed his Parks Department to review the permit and application process to see whether the City should have sent MayDay to a different location that could have facilitated Plaintiffs' event. Ex. A at 2.

120.    Mayor Harrell concluded his Press Release by, once again, blaming Plaintiffs and stating that he would ensure Seattle stood against Plaintiffs' religious views, speech, expression, and exercise. "I am grateful for those who make their voices heard in support of our neighbors without resorting to violence. In the face of an extreme right-wing national effort to attack our trans and LGBTQ+ communities, Seattle will continue to stand unwavering in our embrace of diversity, love for our neighbors, and commitment to justice and fairness." Ex. A at 2.

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

121.   The unquestionable import of Mayor Harrell's position was to condemn Plaintiffs for their religious views, speech, expression, and exercise and to blame them for the violent heckler's veto Defendants permitted against Plaintiffs' event.

### F.   Mayor Harrell Dispatches Community Leaders to Condemn MayDay for Violence against its Event and Lead the Heckler's Veto.

122.   In addition to Mayor Harrell's explicit condemnation of Plaintiffs for their religious views, speech, expression, and exercise, Mayor Harrell also incited a mob of hecklers to espouse equal condemnation of Plaintiffs for the violence perpetrated against them.

123.   On May 27, 2025, Mayor Harrell issued another Press Release invoking the statements of a host of supposed faith leaders opposed to MayDay's religious views, speech, expression, and exercise to condemn Plaintiffs for their event and blame them for the violence perpetrated against them. A true and correct copy of Mayor Harrell's May 27 Press Release is attached hereto as EXHIBIT D and incorporated herein.[2]

124.   One purportedly prominent faith leader condemned Plaintiffs for their views by claiming they were "extremist" and that Plaintiffs' were "weaponize[ing]" Christianity by engaging in their views. " Ex. D at 1 ("As a clergyman and the Pastor of First A.M.E. Church, we stand with our Mayor Bruce Harrell who spends every day advancing the shared values of love, integrity, and unity that is expressed not only in the Christian faith but in our interfaith beloved community. Those who seek

---

[2] Press Release, Office of the Mayor, *Statements from Prominent Seattle Christian and Faith Leaders* (May 27, 2025), *available at* https://harrell.seattle.gov/2025/05/27/statements-from-prominent-seattle-christian-and-faith-leaders/.

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

to weaponize Christianity and preach extremist views reflect poorly on the church and the whole ecumenical and interfaith community.")

125.   Another purported leader said Plaintiffs' views were misguided and condemned them for expressing such views. Ex. D at 2 ("Madrona Grace Presbyterian Church stands with the LGBTQI community. We are saddened by the rally that took place at Cal Anderson Park on Saturday. . . . What happened on Saturday had nothing to do with loving thy neighbor. We condemn these actions of hate by a misguided group of believers who targeted the LGBTQI community.  Instead, we stand with the LGBTQI community on the right side for justice and love.").

126.   A purportedly prominent Jewish leader joined the mob attacking Plaintiffs and condemned Plaintiffs for their views, saying Plaintiffs' event brought "a new assault on our shared sense of humanity [and] decency" and left him "struggling not to rationalize or excuse the inexcusable." Ex. D at 2-3.

127.   In essence, this leader condemned Plaintiffs' religious views and expression as "inexcusable," and he said that Plaintiffs' event represented "[h]ateful rhetoric against our LGBTQ+ community." Ex. D at 2-3.

128.   Another purportedly prominent leader claimed that Plaintiffs did not represent the views of Christianity and that Plaintiffs' event represented nothing more than "bigotry and hate masquerading as Christian values." Ex. D at 3 ("No one group represents the vast and diverse belief systems that reside in Christianity, specifically groups that deny Scripture's claim that every human, regardless of their race, ethnicity, sexuality, gender expression or lack thereof, are made in the image of God. I am among a large group of Christians and Clergy that believe that God is real and LGBTQIA+ people are human beings that deserve to live in the abundance that God intended for all of us to. I support, love, and affirm our Trans and Same Gender

22

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

Loving siblings because of my faith, and join others in the faith to stand firmly against all forms of bigotry and hate masquerading as Christian values.")

129.    Another purportedly prominent faith leader piled on accused Plaintiffs of being hypocrites and unworthy of the faith. Ex. D at 3-4 ("As a Christian pastor and a citizen of this country, I strongly oppose any actions or rhetoric that seek to undermine the dignity, freedoms, or safety of others—particularly those already vulnerable in our society like our LGBTQ+ neighbors. Those who cannot love their neighbors and who will not treat all of their neighbors as they want to be treated themselves are religious hypocrites and not true to the faith. When people use religion to justify taking away others' constitutionally protected rights, they stray from both the principles of democracy and the core of our faith—which is rooted in love, justice, compassion, and our shared humanity.").

130.    Yet another condemned Plaintiffs as "ungodly" and "vicious" for espousing their constitutionally protected speech, views, expression, and exercise. Ex. D at 4 ("Years ago, Seattle was named a city of compassion. It is, therefore, our moral prerogative to stand in solidarity with our trans and gender diverse siblings. There is nothing godly or compassionate in vicious anti-trans movements and legislation that spill violence and bigotry against those living as created by God. May we as a city stand courageously against the snatching of human rights couched in religious nationalism and trans-antagonism.")

131.    Still another parroted the Mayor by claiming Plaintiffs were "weaponizing" religion and hate, and blamed them for the events because of their views. Ex. D at 4 ("What happened in Seattle this weekend was not an act of faith— it was a weaponization of religion to spread hate. For too long, the Church has condemned and excluded LGBTQIA+ people, and silence in the face of that harm has been a form of complicity. At Queen Anne Baptist Church, we refuse to participate in

23

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1   that legacy any longer. We denounce all forms of hate and boldly proclaim a Gospel

2   of radical inclusion, where our LGBTQIA+ siblings are not just welcomed but

3   celebrated, affirmed, and called into the fullness of life and leadership in God's

4   beloved community.").

5       132.   Another purportedly prominent leader likewise accused Plaintiffs of

6   hate, bad theology, and bigotry for espousing their constitutionally protected views,

7   speech, expression, and exercise, and joined the Mayor's hostility by claiming that

8   MayDay was a "fringe" group. Ex. D at 5 ("Mayday's desire is to wrap their personal

9   hate, fear, and bigotry in Christian speak. It won't work. The call of Jesus to his

10  followers was to first love God and secondly to love our neighbors. In no way does the

11  ideology or bad theology of this fringe group embody the love of God.").

12      133.   The last purportedly prominent faith leader congratulated the Mayor

13  for condemning Plaintiffs' speech, accused Plaintiffs of perverting religion, and

14  espousing hate for merely engaging in a peaceful and constitutionally protected event.

15  Ex. D at 6 ("We are grateful for Mayor Harrell as he stands with the LGBTQIA+

16  community in defiance of those who would exploit and pervert the message of faith to

17  support a hateful and bigoted attack on some of the most vulnerable in our

18  community.").

19      134.   The Mayor's Press Release of purported religious leaders had one

20  unmistakable aim: to condemn Plaintiffs' views, to blame Plaintiffs for the violence

21  perpetrated against Plaintiffs, and to suggest that no one agrees with Plaintiffs' views.

22      135.   In essence, to justify his unconstitutional silencing of Plaintiffs' views,

23  speech, expression, and exercise, the Mayor incited a mob of purported religious

24  leaders to publicize a heckler's veto against Plaintiffs' speech and views.

25      136.   Mayor Harrell's Press Release, combined with his own hostile and

26  unconstitutionally discriminatory statements, was designed to demonstrate that the

27                                         24

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

28

City was permitted to shut down Plaintiffs' speech and silence their views because they are "inherently opposed to our city's values." Ex A at 1.

**E.  Irreparable Injury to Plaintiffs' First Amendment Rights.**

137.  Defendants' permitting scheme on its face and as-applied discriminated against Plaintiffs' requested permit and speech in favor of speech the Mayor deemed as sharing the City's values.

138.  Despite permitting a host of other similarly situated events, Defendants' revoked Plaintiffs' requested permit and shut down their event on the basis of the content and viewpoint of Plaintiffs' event.

139.  Plaintiffs were deprived of their opportunity to host their permitted event while other similarly situated organizations were permitted to espouse their views.

140.  Plaintiffs were discriminatorily orphaned and shut down on the basis of the objections and violent reactions to Plaintiffs' speech from violent anarchists.

141.  Plaintiffs' speech, expression, and religious exercise were substantially limited and injured by being subjected to heckler's veto and the violent reaction from objectors who assaulted them.

142.  Plaintiffs were unable to reach their intended audience and unable to achieve the desired aims of their speech because of Defendants' unconstitutional permitting schemes and the application of those permitting schemes.

143.  Defendants' unlawful termination of Plaintiffs' event was impermissibly based on Plaintiffs' speech, expression, and religious exercise.

144.  Defendants' unconstitutional termination of Plaintiffs' event eliminated Plaintiffs' ability to effectively communicate their message.

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

145.    Defendants' post-event blame foisted upon Plaintiffs because their speech, expression, and religious exercise were purportedly not consistent with the "City's views" limited Plaintiffs' ability to effectively communicate their message.

146.    Defendants' termination of Plaintiffs' event imposed irreparable constitutional injury and silence on Plaintiffs' protected speech.

## COUNT I

### VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

147.    Plaintiffs hereby reallege and adopt each and every allegation contained in paragraphs 1-146 above as if fully set forth herein.

148.    The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiff's freedom of speech.

149.    Seattle's streets and public parks are archetype traditional public forums.

150.    Defendants' permitting scheme, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' right to speech.

151.    Defendants' permitting scheme, on its face and as applied, fails to provide adequate procedural safeguards for Plaintiffs' protected speech.

152.    Defendants' permitting scheme, on its face and as applied, lacks objective, neutral, and concrete criteria on which Defendants' decision-makers are to decide permitting and expressive activity requests.

153.    Defendants' permitting scheme, on its face and as applied, impermissibly vests Defendants with unfettered discretion to decide which organizations will be permitted to engage in protected speech under the permitting scheme.

26

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

154. Defendants' permitting scheme, on its face and as applied, impermissibly vests Defendants with unbridled discretion to shut down speech on the basis of listener reaction and to impose a heckler's veto on Plaintiffs' constitutionally protected speech.

155. Defendants' permitting scheme, on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

156. Defendants' permitting scheme, on its face and as applied, unconstitutionally discriminates on the basis of content.

157. Defendants' permitting scheme, on its face and as applied, fails to leave open ample alternative channels of communication.

158. Defendants' permitting scheme, on its face and as applied, is unconstitutionally vague.

159. Defendants' permitting scheme, on its face and as applied, is unconstitutionally overbroad.

160. Defendants' permitting scheme, on its face and as applied, serves no legitimate, important, or compelling government interest.

161. Defendants' permitting scheme, on its face and as applied, is not rationally related to any important government interest.

162. Defendants' permitting scheme, on its face and as applied, is not narrowly tailored to achieve any important government interest.

163. Defendants' permitting scheme, on its face and as applied, is not the least restrictive means of achieving any compelling government interest.

164. As a direct and proximate result of Defendants' violation of Plaintiffs' right to free speech under the First Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm for the loss of their cherished constitutional rights.

27

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

165.    Plaintiffs have suffered actual damages as a result of the infringement of their cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT II

### VIOLATION OF THE PEACEABLE ASSEMBLY CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

166.    Plaintiffs hereby reallege and adopt each and every allegation contained in paragraphs 1-146 above as if fully set forth herein.

167.    The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging the right of the people peaceably to assemble.

168.    Defendants' permitting scheme, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' right to assemble.

169.    Defendants' permitting scheme, on its face and as applied, fails to provide adequate safeguards for Plaintiffs' protected assembly.

170.    Defendants' permitting scheme, on its face and as applied, lacks objective, neutral, and concrete criteria on which Defendants' decision-makers are to decide permitting and expressive activity requests.

171.    Defendants' permitting scheme, on its face and as applied, impermissibly vests Defendants with unfettered discretion to decide which organizations will be permitted to engage in protected assembly under the permitting scheme.

172.    Defendants' permitting scheme, on its face and as applied, impermissibly vests Defendants with unbridled discretion to shut down protected

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

assembly on the basis of listener reaction and to impose a heckler's veto on Plaintiffs' constitutionally protected assembly.

173.    Defendants' permitting scheme, on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

174.    Defendants' permitting scheme, on its face and as applied, unconstitutionally discriminates on the basis of content.

175.    Defendants' permitting scheme, on its face and as applied, fails to leave open ample alternative channels of communication.

176.    Defendants' permitting scheme, on its face and as applied, is unconstitutionally vague.

177.    Defendants' permitting scheme, on its face and as applied, is unconstitutionally overbroad.

178.    Defendants' permitting scheme, on its face and as applied, serves no legitimate, important, or compelling government interest.

179.    Defendants' permitting scheme, on its face and as applied, is not rationally related to any important government interest.

180.    Defendants' permitting scheme, on its face and as applied, is not narrowly tailored to achieve any important government interest.

181.    Defendants' permitting scheme, on its face and as applied, is not the least restrictive means of achieving any compelling government interest.

182.    As a direct and proximate result of Defendants' violation of Plaintiffs' right to peaceable assembly under the First Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm for the loss of their cherished constitutional rights.

183.    Plaintiffs have suffered actual damages as a result of the infringement of their cherished constitutional liberties.

29

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in the prayer for relief.

<u>**COUNT III**</u>

**VIOLATION OF FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

184.    Plaintiffs hereby reallege and adopt each and every allegation contained in paragraphs 1-146 above as if fully set forth herein.

185.    The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government from abridging Plaintiffs' rights to free exercise of religion.

186.    Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

187.    Plaintiffs have sincerely held religious beliefs, compelled by Scripture, that "to him that knoweth to do good, and doeth it not, to him it is sin." *James* 4:7 (KJV).

188.    Plaintiffs have sincerely held religious beliefs, compelled by Scripture, that he is to "take no part in the unfruitful works of darkness," but to "expose them." *Ephesians* 5:11 (ESV).

189.    Plaintiffs have sincerely held religious beliefs, compelled by Scripture, that requires him to understand that silence in the face of evil is evil itself. *See Provers* 8:1-8 ("Doth wisdom not cry? And understanding put forth her voice . . . She crieth at the gates, at the entry of the city, at the coming in at the doors. . . . Hear, for I will speak excellent things; and the opening of my lips shall be right things. For my mouth speak truth; and wickedness is an abomination to my lips. All the words of my mouth are in righteousness; there is nothing froward or perverse in them." (KJV).

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1

2

3

190.   Plaintiffs have sincerely held religious beliefs, compelled by Scripture, that they are to "open [their] mouth for the mute, for the rights of all who are destitute" and to "[o]pen [their] mouth" and "judge righteously." *Proverbs* 31:8-9 (ESV).

4

5

6

191.   Plaintiffs have sincerely held religious beliefs, compelled by Scripture, that there is "a time to keep silence, and a time to speak," *Ecclesiastes* 3:7 (ESV), and that the time to speak is when that which they view as wrong is taking place in society.

7

8

9

10

11

192.   Plaintiffs have sincerely held religious beliefs that for them to fail to speak out against things they know are wrong results in the eternal condemnation of his soul. "If you say, 'behold, we did not know this,' does not he who weighs the heart perceive it? Does not he who keeps watch over your soul know it, and will he not repay man according to his work." *Proverbs* 24:12 (ESV).

12

13

14

193.   Defendants' permitting scheme, on its face and as applied by Defendants, targets Plaintiff's sincerely held religious beliefs for disparate and discriminatory treatment, solely on the basis of their religious nature.

15

16

17

18

19

194.   Defendants' permitting scheme, on its face and as applied by Defendants, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the government's imposed value system.

20

21

195.   Defendants' permitting scheme, on its face and as applied by Defendants, is neither neutral nor generally applicable.

22

23

24

196.   Defendants' permitting scheme, on its face and as applied by Defendants, specifically targets Plaintiffs' religious beliefs, expression, and speech for disparate and discriminatory treatment.

25

26

197.   Defendants' permitting scheme, on its face and as applied by Defendants, specifically targets religion for disparate and discriminatory treatment.

27

28

31

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

198.   Defendants' permitting scheme, on its face and as applied by Defendants, creates a system of individualized exemptions for preferred value systems while discriminating against sincerely held religious beliefs.

199.   Defendants' permitting scheme, on its face and as applied by Defendants, constitutes a religious gerrymander by unconstitutionally orphaning sincerely held religious beliefs while permitting the more favored nonreligious value systems.

200.   Defendants' permitting scheme, on its face and as applied by Defendants, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

201.   Defendants' permitting scheme, on its face and as applied by Defendants, fails to accommodate Plaintiff's sincerely held religious beliefs.

202.   Defendants' permitting scheme, on its face and as applied by Defendants, is not supported by any compelling, legitimate, substantial, or even rational government interest.

203.   Defendants' permitting scheme, on its face and as applied, serves no legitimate, important, or compelling government interest.

204.   Defendants' permitting scheme, on its face and as applied, is not rationally related to any important government interest.

205.   Defendants' permitting scheme, on its face and as applied, is not narrowly tailored to achieve any important government interest.

206.   Defendants' permitting scheme, on its face and as applied, is not the least restrictive means of achieving any compelling government interest.

207.   As a direct and proximate result of Defendants' violation of Plaintiffs' right to free exercise their sincere religious beliefs under the First Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm for the loss of their cherished constitutional rights.

208.    Plaintiffs have suffered actual damages as a result of the infringement of their cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT IV

### VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

209.    Plaintiffs hereby reallege and adopt each and every allegation contained in paragraphs 1-146 above as if fully set forth herein.

210.    The Establishment Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the government from establishing a religion.

211.    The Establishment Clause also prohibits the government from showing hostility towards religion and prohibits showing favoritism towards one religious sect over another or between non-religion and religion.

212.    Defendants' permitting scheme, on its face and as applied by Defendants, permit Defendants to display impermissible hostility towards religious gatherings.

213.    Defendants' permitting scheme, on its face and as applied by Defendants, impermissibly shows favoritism towards certain non-religious expressive activities and speech over religious expressive activities and speech.

214.    Defendants' permitting scheme, on its face and as applied by Defendants, violates the Establishment Clause because it excessively entangles the government with religion.

215.    Defendants' permitting scheme, on its face and as applied by Defendants, purports to inform religious adherents and believers how they may choose to worship,

33

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

assemble together, or engage in their religious freedoms in the traditional public forums of the streets, parks, and sidewalks.

216.    Defendants' permitting scheme, on its face and as applied by Defendants, purports to establish an acceptable method of religious exercise and expression, place a content and viewpoint based limitation on their religious exercise, and provide a government imprimatur for only certain forms of "permissible" religious exercise and expression in the public square.

217.    Defendants' permitting scheme, on its face and as applied by Defendants, demonstrates overt hostility to religious practice and worship that does not conform to government sanctioned religious exercises and expression.

218.    As a direct and proximate result of Defendants' violation of the Establishment Clause of the First Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm for the loss of their cherished constitutional rights.

219.    Plaintiffs have suffered actual damages as a result of the infringement of their cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in the prayer for relief.

## <u>COUNT V</u>

**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

220.    Plaintiffs hereby reallege and adopt each and every allegation contained in paragraphs 1-146 above as if fully set forth herein.

221.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

34

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

222.    "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

223.    The Equal Protection Clause prohibits discrimination on the basis of religion.

224.    Defendants' permitting scheme, on its face and as applied by Defendants, is an unconstitutional abridgment of Plaintiff's right to equal protection under the law, is not neutral, and specifically targets Plaintiff's sincerely held religious beliefs, speech, and expression for discriminatory and unequal treatment.

225.    Defendants' permitting scheme, on its face and as applied by Defendants, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits Defendants to treat Plaintiffs differently from other similarly situated individuals and organizations on the basis of Plaintiffs' sincerely held religious beliefs, speech, and expression.

226.    Defendants' permitting scheme, on its face and as applied by Defendants, singles out Plaintiffs for selective treatment based upon their sincerely held religious beliefs, speech, and expression.

227.    Defendants' permitting scheme, on its face and as applied by Defendants, is explicitly intended to inhibit and punish the exercise of Plaintiffs' sincerely held religious beliefs, speech, and expression.

228.    Defendants' permitting scheme, on its face and as applied by Defendants, creates a system of classes and categories that permits the government to exclude certain sincerely held religious beliefs, speech, and expression from the public square.

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

229.   Defendants' permitting scheme, on its face and as applied by Defendants, has created and singled out a specific class of people as compared to similarly situated Plaintiffs with no religious convictions, speech, or expression, or with different speech or expression that Defendants deem less controversial.

230.   Defendants' permitting scheme, on its face and as applied by Defendants, is a "status-based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996).

231.   Defendants' permitting scheme, on its face and as applied by Defendants, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

232.   Defendants' permitting scheme, on its face and as applied by Defendants, results in a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

233.   Defendants' permitting scheme, on its face and as applied by Defendants, "declar[es] that in general it shall be more difficult for one group of citizens than for all others to seek [certain status] from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.*

234.   Defendants' permitting scheme, on its face and as applied by Defendants, discriminates between religion and nonreligion by allowing certain, nonreligious speech and expression while categorically excluding similarly situated speech and expression from the same treatment, and does so solely on the basis of religious belief.

235.   Defendants' permitting scheme, on its face and as applied by Defendants, "raises the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected," *id.* at 634, and thus violates the Equal Protection Clause

36

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

236.    Defendants' permitting scheme, on its face and as applied by Defendants, is not supported by any compelling, legitimate, substantial, or even rational government interest.

237.    Defendants' permitting scheme, on its face and as applied by Defendants, is not supported by any compelling, legitimate, substantial, or even rational government interest.

238.    Defendants' permitting scheme, on its face and as applied, serves no legitimate, important, or compelling government interest.

239.    Defendants' permitting scheme, on its face and as applied, is not rationally related to any important government interest.

240.    Defendants' permitting scheme, on its face and as applied, is not narrowly tailored to achieve any important government interest.

241.    Defendants' permitting scheme, on its face and as applied, is not the least restrictive means of achieving any compelling government interest.

242.    As a direct and proximate result of Defendants' violation of Plaintiffs' right to free exercise their sincere religious beliefs under the First Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm for the loss of their cherished constitutional rights.

243.    Plaintiffs have suffered actual damages as a result of the infringement of their cherished constitutional liberties.

WHEREFORE, Plaintiff respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.    That the Court issue a preliminary injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining Defendants and

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with Defendants' permitting requirements in such a manner as to violate Plaintiffs' rights to free speech, peaceable assembly, religious exercise, and equal protection, to wit:

(1)    Defendants will immediately stop enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with Special Event permitting schemes, including: (a) Seattle Ordinance §§15.52.040, 15.52.050, 15.52.060, 15.52.070, and (b) Defendants' other written and unwritten policies, procedures, and requirements that restrict speech, expression, assembly, and religious exercise on the basis of its content, viewpoint, nature, potential for objections, or the other vague and undefined criteria to which Plaintiffs were subjected;

(2)    Defendants will immediately cease violating Plaintiffs' rights by providing Plaintiffs' equal access to Seattle's streets, sidewalks, and public parks or any other requested location in a manner similar to the non-religious organizations permitted to host events across Seattle; to conduct MAYDAY USA.

(3)    Defendants must amend the challenged permitting schemes, including but not limited to (a) Seattle Ordinance §§15.52.040, 15.52.050, 15.52.060, 15.52.070, and (b) Defendants' other written and unwritten policies, procedures, and requirements to ensure that there are objective, definite, concrete, and unwaivable criteria by which the decisionmakers must make a decision on the permit application;

(4)    Defendants must amend the challenged permitting schemes, including but not limited to (a) Seattle Ordinance §§15.52.040, 15.52.050, 15.52.060, 15.52.070, and (b) Defendants' other written and unwritten policies, procedures, and requirements to ensure that fees associated with any requested permit are evenly

38

and constitutionally applied such that there are objective, definite, concrete, and unwaivable criteria by which permitting fees and costs are assessed;

(5)     Defendants must amend the challenged permitting schemes, including but not limited to (a) Seattle Ordinance §§15.52.040, 15.52.050, 15.52.060, 15.52.070, and (b) Defendants' other written and unwritten policies, procedures, and requirements to ensure that fees associated with any requested permit are evenly and constitutionally applied such that there are objective, definite, concrete, and unwaivable criteria by which waiver of permitting fees and costs are assessed and granted;

(6)     Defendants must amend the challenged permitting schemes, including but not limited to (a) Seattle Ordinance §§15.52.040, 15.52.050, 15.52.060, 15.52.070, and (b) Defendants' other written and unwritten policies, procedures, and requirements to ensure that fees associated with any requested permit are evenly and constitutionally applied such that there are objective, definite, concrete, and unwaivable time limitations imposed upon Defendants for making a decision regarding any permit application;

(7)     Defendants must amend the challenged permitting schemes, including but not limited to (a) Seattle Ordinance §§15.52.040, 15.52.050, 15.52.060, 15.52.070, and (b) Defendants' other written and unwritten policies, procedures, and requirements to ensure that fees associated with any requested permit are evenly and constitutionally applied such that there are objective, definite, concrete, and unwaivable time limits imposed upon Defendants for making a decisions regarding any appeal of a permit application;

(8)     Defendants must amend the challenged permitting schemes, including but not limited to (a) Seattle Ordinance §§15.52.040, 15.52.050, 15.52.060, 15.52.070, and (b) Defendants' other written and unwritten policies, procedures, and

39

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

requirements to ensure that fees associated with any requested permit are evenly and constitutionally applied such that there are objective, definite, concrete, and unwaivable time limits by which decisions on permitting fees and costs or waivers of fees and costs are decided.

B.    That the Court render a Declaratory Judgment, declaring that Defendants permitting schemes, including but not limited to (a) Seattle Ordinance §§15.52.040, 15.52.050, 15.52.060, 15.52.070, and (b) Defendants' other written and unwritten policies, procedures, and requirements, are both on their face and as applied by Defendants, are illegal and unlawful under the First and Fourteenth Amendment to the United States Constitution, and further declaring that

(1) Defendants' unofficial policy of being able to deny a permit on the basis that other may object to the speech, expression, or religious exercise of the requested event in an unconstitutional heckler's veto; and

(2) Defendants' unofficial policy requiring the modification of permitted events to better balance the interests of the public with the desires of the event applicant is illegal and unlawful under the First and Fourteenth Amendment to the United States Constitution.

C.    That the Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

D.    That the Court award Plaintiffs' actual and compensatory damages in an amount to be determined at trial;

E.    That the Court award Plaintiffs' nominal damages as and for vindication of Plaintiffs' cherished constitutional rights under the First and Fourteenth Amendments to the United States Constitution;

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1

2     F.     That the Court award Plaintiffs' punitive damages for egregious and outrageous actions of Defendants;

3     G.     That the Court award Plaintiffs' their reasonable attorney's fees, costs,

4     and other expenses and disbursements in this action under 42 U.S.C. §1988, and as

5     otherwise allowed by law;

6     H.     That the Court retain jurisdiction over the matter for the purposes of

7     enforcing the Court's Order; and

8     I.     That the Court grant such other and further relief as the Court deems

9     equitable and just under the circumstances.

10     J.     Plaintiffs demand a trial by jury on all issues so triable.

11     Respectfully submitted,

12

13     /s/ Klaus O. Snyder                        /s/ Daniel J. Schmid
       Klaus O. Snyder (WA 16190)                 Mathew D. Staver*
14     Snyder Law Firm, LLC                        Horatio G. Mihet*
       15306 Main St. E, Ste. B                    Daniel J. Schmid*
15     Sumner, WA 98390                            Avery B. Hill*
       Klaus.Snyder@sumnerlawcenter.com           LIBERTY COUNSEL
16     (253) 863-2889                             P.O. Box 540774
                                                  Orlando, FL 32854
17                                                (407) 875-1776 Telephone
                                                  (407) 875-0770 Facsimile
18                                                court@lc.org
                                                  hmihet@lc.org
19                                                dschmid@lc.org
                                                  ahill@lc.org
20
                                                  *Admission *pro hac vice* pending
21
                                                  *Attorneys for Plaintiffs*
22

23

24

25

26

27     VERIFIED COMPLAINT                         SNYDER LAW FIRM, LLC
       CASE NO. _____                       15306 Main St. E, Ste. B
28                                                 Sumner, WA 98390
                                                   (253) 863-3889

41

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>VERIFICATION</u>**

I, Russell Johnson, am over the age of eighteen years and the Plaintiff in this action. Pursuant to 28 U.S.C. § 1746, I verify and declare under penalty of perjury that the foregoing allegations that pertain to me are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently.

/s/ Russell Johnson

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, Jenny Donnelly, am over the age of eighteen years and the Plaintiff in this action. Pursuant to 28 U.S.C. § 1746, I verify and declare under penalty of perjury that the foregoing allegations that pertain to me and to Plaintiff Her Voice Movement, Inc. are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently.

/s/ Jenny Donnelly_____

VERIFIED COMPLAINT
CASE NO. _____

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1

## **<u>VERIFICATION</u>**

2      I, Robert Donnelly, am over the age of eighteen years and the Plaintiff in this

3  action. Pursuant to 28 U.S.C. § 1746, I verify and declare under penalty of perjury

4  that the foregoing allegations that pertain to me are true and correct, and based upon

5  my personal knowledge (unless otherwise indicated). If called upon to testify to their

6  truthfulness, I would and could do so competently.

7                                    /s/ Robert Donnelly

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    44

28

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>VERIFICATION</u>**

I, Ross Johnston, am over the age of eighteen years and the Plaintiff in this action. Pursuant to 28 U.S.C. § 1746, I verify and declare under penalty of perjury that the foregoing allegations that pertain to me are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently.

/s/ Ross Johnston _____

45

SNYDER LAW FIRM, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
(253) 863-3889