UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
Seattle Division

| | |
|---|---|
| RUSSELL JOHNSON JENNY DONNELLY; HER VOICE MOVEMENT, INC., d/b/a TETELESTAI MINISTRIES; ROBERT DONNELLY; ROSS JOHNSTON;<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE, WASHINGTON; BRUCE HARRELL, in his official capacity as Mayor of the City of Seattle, Washington; SHON BARNES, in his official capacity as Chief of Police for the Seattle Police Department;<br><br>Defendants. | Case No. 2:25-cv-1874-BJR<br><br>**MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |

i

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

Come now, Plaintiffs, Russell Johnson, Jenny Donnelly; Her Voice Action, Inc.; Robert Donnelly; Ross Johnston; Ross Johnston Ministries ("Plaintiffs"), pursuant to Fed. R. Civ. P. 65 and Local Civil Rule 7, move the Court for a preliminary injunction against Defendants, City of Seattle, Washington; Bruce Harrell, in his official capacity as Mayor of the City of Seattle, Washington; Shon Barnes, in his official capacity as Chief of Police for the Seattle Police Department (collectively "the City" or "Defendants"), as set forth in the incorporated Memorandum of Law in Support and the sworn allegations of the Verified Complaint and request oral argument on the motion.

## MEMORANDUM OF LAW IN SUPPORT

## ARGUMENT

To obtain a preliminary injunction, Plaintiffs must show that (1) they are likely to succeed on the merits of their claims against Defendants, (2) they are suffering irreparable harm in the absence of a preliminary injunction, (3) the balance of the equities tips in Plaintiffs' favor, and (4) the injunction is in the public's interest. *Winter v. National Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury," because a showing of a likelihood of success "usually demonstrates he is suffering irreparable harm no matter how brief the violation" and that showing necessarily "tips the public interest decidedly in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The reason for this is simple: "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id*. (citations omitted). Plaintiffs satisfy all four factors, and thus respectfully request this Court issue a preliminary injunction.

**I.    Plaintiffs are likely to succeed on the merits.**

**A. Defendants' permitting scheme is a presumptively unconstitutional prior restraint.**

It is axiomatic that prior restraints are highly suspect and disfavored. *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Indeed, "[a]ny system of prior restraints of

1

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

expression comes to this Court bearing *a heavy presumption against its constitutional validity.*" *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) (citing cases) (emphasis added). "Because a censor's business is to censor, there inheres the danger that he may well be less responsive than a court . . . to the constitutionally protected interests in free expression." *Freedman v. Maryland*, 380 U.S. 51, 57-58 (1965).

> It is offensive—not only to the values protected by the First Amendment, but to the very notion of a free society—that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so. *[A] law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition*.

*Watchtower Bible & Tract Soc'y of N.Y. v. Vill. of Stratton*, 536 U.S. 150, 165-66 (2002) (emphasis added); *see also Lovell v. City of Griffin*, 303 U.S. 444, 451-52 (1938) ("[w]hile this freedom from previous restraint . . . upon publication cannot be regarded as exhausting the guaranty of liberty, the prevention of that restraint was a leading purpose in the adoption of the [First Amendment].").

"While prior restraints are not unconstitutional *per se*," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990), the Supreme Court has "identified two evils that *will not be tolerated* in such schemes." *Id.* The first intolerable evil is "a scheme that places unbridled discretion in the hands of a government official [and] may result in censorship." *Id.* at 225-26. The second is "a prior restraint that fails to place time limits within which a decision maker must issue the license." *Id.* at 226. A prior restraint scheme "avoids constitutional infirmity *only* if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Freedman*, 380 U.S. at 58 (emphasis added). Defendants' permitting schemes are unconstitutional prior restraints that place unbridled discretion in the hands of City officials, while failing to set adequate procedural safeguards and reasonable time restraints on permit application review. "Prior restraints

2

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

in speech are disfavored and carry a heavy presumption of invalidity." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 111, 1023 (9th Cir. 2009). "'[P]rior restraints on speech and publications are the most serious and the least tolerable infringement on First Amendment rights.'" *Rosen v. Port of Portland*, 641 F.2d 1243, 1247 (9th Cir. 1981).

### 1. Defendants' permitting scheme impermissibly vests unbridled discretion in the hands of City officials.

Defendants' permitting schemes vest unbridled discretion in the hands of City officials. "When a city allows an official to ban [speech] in his unfettered control, it sanctions a device for suppression of free communication of ideas." *Saia v. People of State of N.Y.*, 334 U.S. 558, 562 (1948). "[E]ven if the government may constitutionally impose content-neutral prohibitions on a particular manner of speech, *it may not condition that speech on obtaining a license or permit from a government official in that official's boundless discretion*." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 764 (1988) (emphasis added). The danger of viewpoint discrimination is "at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *Id.* at 763. "[T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *Id.* at 757. This is precisely why *"[t]he First Amendment prohibits the vesting of such unbridled discretion in a government official." Forsyth Cnty.*, 505 U.S. at 133 (emphasis added) officials.

"[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood*, 486 U.S. at 755-56. "This is because 'without standards to fetter the licensor's discretion, the difficulties of proof and the case-by-case nature of 'as applied' challenged render the licensor's

3

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

action in large measure effectively unreviewable.'" *Real v. City of Long Beach*, 852 F.3d 929, 933 (2017) (quoting *City of Lakewood*, 486 U.S. at 758-59).

To avoid implementing permitting schemes that grant authorities unbridled discretion, "[r]regulations must contain, 'narrow, objective, and definite standards to guide the licensing authority,' [*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-51 (1969)], and must require the official to 'provide an explanation for his decision,' [*Forsyth County*, 505 U.S. at 133 ]" *Long Beach Area Peace Network*, 574 F.3d at 1025 . "This requirement applies to an official's 'authority to condition the permit on any additional terms' not stated in the ordinance.'" *Id*. (quoting *City of Lakewood*, 486 U.S. at 772). "The standards must be sufficient to 'render [the official's decision] subject to effective judicial review.'" *Id*. (quoting *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 (2002)).

Here, the City's permitting scheme fails to provide any limits, criteria, or objective standards by which officials tasked with reviewing permit applications are to make a decision. V. Compl. ¶55. Moreover, the City has farmed out approval of such applications to private organizations that have veto power over such permit applications, *id.*, ¶56, and nothing restricts the City from denying a permit based on the alleged concerns of the community who might object to the message espoused in any event for which a permit is sought. *Id.*, ¶57. No standards in the permitting scheme restrict the City's ability to deny a permit based on concerns of the nongovernmental organizations (*e.g.*, Seattle Downtown Association; Friends of the Waterfront) from whom applicants must obtain approval. *Id.*, ¶59. And no standards in permitting scheme guide the nongovernmental organizations from whom approval must be obtained. *Id.*, ¶60.

**2. Defendants' permitting scheme fails to set adequate procedural safeguards or reasonable time limits on the decisionmaker.**

Additionally, Defendants' Permitting schemes fail to set adequate procedural safeguards and reasonable time restraints on permit application review. "'[A] prior restraint that fails to place

4

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

limits on the time within which the decisionmaker must issue [a] license is impermissible,' because 'a licensing scheme creates the possibility that constitutionally protected speech will be suppressed where there are inadequate procedural safeguards to ensure prompt issuance of the license.'" *Real v. City of Long Beach*, 852 F.3d at 935 (quoting *FW/PBS*, 493 U.S. at 226).

Plaintiffs experienced the coercive power of unlawful procedural delay during this incident. V. Compl., ¶¶61-91. Plaintiffs waited for weeks in Permit Purgatory as the Defendants completed their unconstitutional game of Permit Hot Potato, only to inform Plaintiffs that their permit would be denied for their requested location. (*Id.*, ¶¶82–87. The First Amendment demands that certain time limits be placed upon officials in the exercise of any scheme of prior restraints.

**B. Defendants' permitting scheme unconstitutionally discriminates against Plaintiffs' viewpoint.**

Defendants denied Plaintiffs a permit because of their religious viewpoint. V. Compl., ¶67 (noting that Plaintiffs' requested location was "not ideal for your worship event"). Indeed, the unmistakable import of Defendants' passing Plaintiffs around to other potential venues was to suggest Defendants did not want Plaintiffs' "worship services" (*i.e.*, religious event) to place on the requested location of Pike Street. *Id.*, ¶71. "When the government does not speak for itself, it may not exclude speech based on 'religious viewpoint'; doing so 'constitutes impermissible viewpoint discrimination.'" *Shurtleff v. City of Boston*, 596 U.S. 243, 258 (2022) (quoting *Good News Club v. Milford Central School*, 533 U.S. 98, 112 (2001). Viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995). "Discrimination against speech because of its message is presumed to be unconstitutional." *Id*. (citing *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641-643 (1994)).

Here, much like *Shurtleff*, Defendant have permitted a host of other similarly situated, non-religious organizations to host events on Pike Street. V. Compl., ¶5. Yet, despite permitting a host

5

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

1  of similarly situated events at Plaintiffs' requested location, *id.*, ¶138, Defendants refused to grant
2  Plaintiffs a permit to host a religious event. To make matters worse, Defendants admitted that it
3  was because of Plaintiffs' viewpoint that it would not be permitted. *Id.*, ¶¶67, 71.

**C. Defendants unconstitutionally subjected Plaintiffs' speech to a show of hands.**

"It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers[.]" *Street v. New York*, 394 U.S. 576, 592 (1969). Similarly, speech may not be silenced because "bystanders object to peaceful and orderly demonstrations." *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Department*, 533 F.3d 780, 787 (9th Cir. 2008).

Plaintiffs were then informed that they required obtaining the approval of non-government entities to engage in constitutionally protected expression. V. Compl. ¶¶65, 68–70. Defendants thus make it explicit to Plaintiffs that the objections (*i.e.*, heckler's vetoes) of the Pike Street business owners would take priority over Plaintiffs' constitutionally protected speech. *Id.* Specifically, the City informed Plaintiffs that they should consider alternative locations to Pike Street to avoid the objections businesses had to religious events last year "in case Pike St is not the best fit." *Id.*, ¶79. In other words, Defendants made clear to Plaintiffs that community objections to their proposed event, with its religious viewpoint, would be sufficient reason to deny their requested permit at their requested location.

Defendants wielded their permitting scheme to unconstitutionally condition the exercise of First Amendment rights on a show of hands. But, as a matter of black letter law, MayDay's right to free speech, free assembly, and religious exercise "may not be submitted to vote; they depend on the outcome of no elections." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943). Simply put, "majority votes do not, as such, defeat First Amendment protections." *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 394 (2000).

6

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

The Supreme Court's decision in *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 579 (1995) is particularly instructive. There, the Court noted that the government "is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government." *Hurley*, 515 U.S. at 579. In *Hurley*, "veterans organizing a St. Patrick's Day parade in Boston refused to include a group of gay, lesbian, and bisexual individuals in their event." *303 Creative LLC v. Elenis*, 600 U.S. 570, 585 (2023). A group of gay individuals sought to participate in the event pursuant to Massachusetts' public accommodations statute. *Id*. (quoting *Hurley*, 515 U.S. at 557). The Supreme Court rejected the notion that speech could be silenced or otherwise denied merely because it did not receive community approval.

> The very idea that a noncommercial speech restriction be used to produce thoughts and statements acceptable to some groups or, indeed, all people, grates on the First Amendment, for it amounts to nothing less than a proposal to limit speech in the service of orthodox expression. The Speech Clause has no more certain antithesis.

*Hurley*, 515 U.S. at 579 (internal citations omitted). Defendants' imposition of a majority-approval requirement runs roughshod over the First Amendment and cannot stand.

**D.  Defendants' subjected Plaintiffs' speech to an unconstitutional heckler's veto.**

In addition to requiring Plaintiffs to go hat-in-hand seeking community approval for their speech, Defendants denied Plaintiffs' permit application on the basis that community businesses and individuals had objected to Plaintiffs' speech, V. Compl., ¶¶67, 71, and also required Plaintiffs to shut down the ultimate event because of violent agitators who assaulted them during their event. *Id.*, ¶¶96–98, 108–112. Defendants were explicit that it was reactions to Plaintiffs' planned event that caused Defendants to deny their requested permit and to silence their speech at the event. *Id.* In other words, Defendants denied Plaintiffs' permit application on the basis that other individuals objected to it, and then ultimately shut down Plaintiffs' event because "persons opposed to

7

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

Plaintiff's organization create[d] safety issue through violent or disruptive action." *San Diego Minutemen v. Cal. Bus. Trans. & Housing Agency's Dept. of Transp.*, 570 F. Supp. 2d 1229, 1252 (S.D. Cal. 2008). This is a blatantly unconstitutional heckler's veto.

The Supreme Court has made clear that "[l]isteners' reaction to speech is not a content-neutral basis for regulation," and "[s]peech cannot be punished or banned simply because it might offend a hostile mob." *Forsyth County*, 505 U.S. at 134. Simply put, "the First Amendment does not permit a heckler's veto." *Ctr. for Bio-Ethical Reform*, 533 F.3d at 788. *See also Rob v. Hungerbeeler*, 370 F.3d 735, 743 (9th Cir. 2004) ("The First Amendment knows no heckler's veto."). Binding precedent from the Ninth Circuit compels the conclusion that Defendants' heckler's veto is a gross violation of the First Amendment. *See Meinecke v. City of Seattle*, 99 F.4th 514, 518 (2024). There, people gathered on Second Avenue in Seattle to protest the overturning of *Roe v. Wade*, 410 U.S. 113 (1973). Meinecke, a Chrisitan, attended the march to read the Bible out loud to protestors. *Id*. After an hour, protestors surrounded Meinecke. *Id.* "One protestor seized Meinecke's Bible," another ripped pages from a second Bible Meinecke had in his bag, and alleged members of Antifa picked Meinecke up and dropped him on the other side of the street. *Id*. Police intervened by arresting and removing Meinecke from the situation, rather than taming violent protestors. *Id*. The Court held that Seattle's actions were clearly unconstitutional:

> The City's enforcement actions against Meinecke are content-based heckler's vetoes. Our precedent on this point is clear: The prototypical heckler's veto case is one in which the government silences particular speech or a particular speaker due to an anticipated disorderly or violent reaction of the audience.

*Id.* at 522 (internal citations omitted).

The Court also criticized the City's impermissible time, place, and manner restrictions:

> The police officers on scene, for example, can be heard on the video recordings discussing 'time, place or manner,' and they told Meinecke that they were enforcing

8

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

a 'time, place, and manner' restriction on him. But incanting the words 'time,' 'place,' and 'manner' over a content-based restriction does not transmute it into one that is content neutral.

*Id.* at 523. Here, there is no content-neutrality. Defendants admittedly shut down Plaintiffs' event because of anticipated listener reaction and the reaction of other agitators. V. Compl., ¶¶96–98. Specifically, Defendants informed Plaintiffs that "because of the violence and protestors, police would be forced to revoke the permit," and because the police could allegedly "no longer control" the violent protestors. *Id.*, ¶94–98. In other words, rather than punish violent antifa thugs for criminally assaulting Plaintiffs' event, volunteers, and attendees, Defendants silenced Plaintiffs' protected speech. The First Amendment plainly prohibits such actions.

### E. Defendants' permitting scheme unconstitutionally discriminates against the content of Plaintiffs' speech in violation of strict scrutiny.

#### 1. All content-based restrictions on speech must satisfy strict scrutiny.

"Content-based laws—those that target speech on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling government interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992) (same). Put simply, the Supreme Court has handed down a firm rule: *laws that are content based must satisfy strict scrutiny*. *Id.*; *see also id.* at 174 ("As the Court holds, what we have termed 'content-based' laws must satisfy strict scrutiny.") (Alito, J., concurring).

Here, Defendants admitted that their premise behind denying Plaintiffs' requested permit was due to the content Plaintiffs were going to espouse. Defendants admitted that it was Plaintiffs' religious event that formed the basis for individuals' objections to the permit and its denial. V. Compl., ¶¶65, 67, 71. Denying Plaintiffs' requested permit based on its "nature" is—by necessity—driven by consideration of its content. Defendants' actions and silencing of Plaintiffs'

9

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

speech was therefore content-based and must survive strict scrutiny, which is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 US. 507, 534 (1997). Indeed, "[t]hat standard is not watered down; it really means what it says," *Tandon v. Newsom*, 593 U.S. 61, 65 (2021), which is rarely passed. *See Burson v. Freeman*, 504 U.S. 191, 200 (1992) ("[W]e readily acknowledge that a law rarely survives such scrutiny . . . .").

> **2. Defendants bear the burden to prove their content-based restriction on Plaintiffs' speech satisfies strict scrutiny, even at the preliminary injunction stage.**

"As the Government bears the burden of proof on the ultimate question of [the No Christians in Command Policy's] constitutionality, [Plaintiff] must be deemed likely to prevail unless the Government" satisfies strict scrutiny. *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Indeed, "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). The First Amendment "squarely" places the burden on the government to demonstrate the compelling interest achieved through the least restrictive means. *Id.* at 429. Defendants fail that test.

> **3. Defendants have no compelling interest for their unconstitutional permitting scheme and denial of a permit for Plaintiffs' speech.**

Defendants have no compelling interest in excluding religious speech on the City's streets, especially when Defendants permit speakers with the opposite viewpoint to gather regularly on Pike Street. V. Compl. ¶¶5, 138–139. Where, as here, First Amendment rights are at issue, "the government must shoulder a correspondingly heavier burden and is entitled to considerably less deference in its assessment that a predicted harm justifies a particular impingement on First Amendment rights." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 585 U.S. 878, 907 (2018). Here, because Defendants' permitting scheme and application of it implicates Plaintiffs' First Amendment rights, Defendants "must do more than simply posit the existence of

10

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural." *Turner Broad. Sys.*, 512 U.S. at 664 ; *see also Edenfield v. Fane*, 507 U.S. 761, 770 (1993). This is so because "[d]eference to [the government] cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark Commc'ns, Inc. v. Maine*, 435 U.S. 829, 843 (1978). The government has no interest whatsoever, much less a compelling one, in excluding all religious speech from the public square. Indeed, the compelling interest is in protecting constitutional rights to religious speech, expression, and exercise, *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014), not in excluding religion from the military sphere. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023.)

Here, Defendants' only purported justification for denying Plaintiffs' requested permit was the objections and reactions of others V. Compl., ¶¶67, 71, and that the Downtown Seattle Association was pushing back against Plaintiffs' planned event because of a past religious event. *Id.*, ¶72. And Defendants' explicit justification for shutting down Plaintiffs' speech was the violent listener reaction to it. *Id.*, ¶¶94, 96. Moreover, Defendants engaged in content discrimination by punishing Plaintiffs for violent listener reaction. *Id.* The clear implication of Defendants' statements was that violence against Plaintiffs in Seattle required silencing peaceful speech. But, as demonstrated *supra*, listener reaction is not a sufficient basis to discriminate against the constitutionally protected speech and expression in the public square. Defendants have no interest, let alone a compelling one, in silencing only one viewpoint in the traditional public forums in Los Angeles. Simply put, the First Amendment knows no such "First Amendment Free Zone," *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987).

### 4. Defendants cannot demonstrate that their denial of Plaintiffs' requested permit was the least restrictive means.

Even if Defendants could articulate a compelling interest for excluding religious speech, which they cannot, Defendants' permitting schemes and their application of them would still fail

11

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

strict scrutiny because they are not narrowly tailored to achieve any compelling government interest. "It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those sends. *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). A narrowly tailored regulation of speech is one that achieves the government's interest "without unnecessarily interfering with First Amendment freedoms." *Sable Commc'ns*, 492 U.S. at 126.

Defendants are required to show that there were no less restrictive alternatives to suppressing Plaintiffs' speech. They cannot. To meet this burden, the government must show it "seriously undertook to address the problem with less intrusive tools readily available to it," meaning that it "considered different methods that other jurisdictions have found effective." *McCullen v. Coakley*, 573 U.S. 464, 494 (2014) (emphasis added). And the Governor must "show either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016) (emphasis added), and that "imposing lesser burdens on religious liberty 'would fail to achieve the government's interest, not simply that the chosen route was easier.'" *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (quoting *McCullen*, 573 U.S. at 494).

Defendants did none of this. They silenced Plaintiffs' speech and denied their permit as a first measure. V. Compl. ¶¶82–85. Then, Defendants silenced Plaintiffs' speech without silencing the violent hecklers. *Id.*, ¶¶94, 96. Defendants therefore cannot satisfy their burden that a total prohibition on Plaintiffs' speech is the least restrictive means. Indeed, total prohibitions on constitutionally protected speech are "hardly an exercise of narrow tailoring." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).

12

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

**F. Defendants' permitting scheme violates the Free Exercise Clause.**

  **1. Defendants treated Plaintiffs' religious speech and exercise less favorably than comparable non-religious activity.**

Defendants' Permitting schemes and their enforcement of these regulations are neither neutral nor generally applicable and thus violate the Free Exercise Clause. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon*, 593 U.S. at 63; *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) ("Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature."). Here, Defendants have treated non-religious events, expression, and assemblies more favorably than Plaintiffs' proposed religious speech and exercise. V. Compl. ¶¶5, 138–139. Thus, the disparate treatment of Plaintiffs' permit application is alone sufficient to demonstrate a violation of the Free Exercise Clause.

  **2. Defendants' discretionary mechanisms for individualized exemptions demonstrates their treatment of Plaintiffs' speech and religious exercise is neither neutral nor generally applicable.**

As the Supreme Court has noted, "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533. The Ninth Circuit held, "the mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally applicable." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664 (9th Cir. 2023). "Second, whether two activities are comparable for purposes of the Free

13

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

Exercise Clause must be adjudged against the asserted government interest that justified the regulation at issue. *Tandon v. Newsom*, 593 U.S. at 62 (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. at 17)). Here, in addition to providing the City with complete discretion to approve or deny a permit on the basis of zero concrete criteria (*supra* Section I.A), the permitting scheme provides Defendants with explicit authority to grant exemptions to certain requirements of the permit but is wholly discretionary and provides no basis upon which the City can make the determination. V. Compl., ¶¶72-73. This discretionary mechanism demonstrates Defendants' permitting scheme is neither neutral nor generally applicable.

### 3. Defendants' permitting scheme and their application of it fail strict scrutiny.

Defendants' actions fail strict scrutiny under the Free Exercise Clause for the same reasons articulated above. *Supra* Section I.E.

## II. PLAINTIFFS ARE SUFFERING IRREPARABLE HARM.

In considering a preliminary injunction request in the Ninth Circuit, "a colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (cleaned up). This is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *A.P. v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (same). Moreover, "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012) (quoting *Kikumara v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)). The reason for that is simple: "the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up). Here, Plaintiffs attempted to obtain a permit to have equal access to Pike Street for expressive activity. They were denied access on the basis of their viewpoint and content. Moreover, Plaintiffs' speech was silenced. That is alone sufficient to demonstrate irreparable harm. *See also* V. Compl., ¶¶137–146.

14

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

## III. PLAINTIFFS SATISFY THE OTHER REQUIREMENTS FOR INJUNCTIVE RELIEF.

"When, like here, the nonmovant is the government, the last two Winter factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The reason for that is simple: "We have consistently recognized the 'significant public interest' in upholding free speech principles." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting *Sammartano v. First Jud. Dist. Ct., in & for Cnty. Of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002)). Simply put: "it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1040 (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)). Because Plaintiffs' have shown their likelihood of success on the merits and irreparable harm from Defendants' First Amendment violations, "the balance of the equities and the public interest thus tip sharply in favor of enjoining" Defendants' policies. *Klein*, 584 F.3d at 1208. The preliminary injunction should issue.

## CONCLUSION

Because Defendants' Permitting schemes unconstitutionally discriminate against Plaintiffs' viewpoint, represent unconstitutional prior restraints that impermissibly vest Defendants and their officials with unbridled discretion, and impermissibly violate Plaintiffs' right to free speech, the preliminary injunction should issue.

15

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776

Respectfully submitted,

/s/ Klaus O. Snyder
Klaus O. Snyder (WA 16190)
Snyder Law Firm, LLC
15306 Main St. E, Ste. B
Sumner, WA 98390
Klaus.Snyder@sumnerlawcenter.com
Phone

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Daniel J. Schmid*
Avery B. Hill*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776 Telephone
(407) 875-0770 Facsimile
court@lc.org
hmihet@lc.org
dschmid@lc.org
ahill@lc.org
*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

16

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-1874

LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854
(407) 875-1776