The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUSSELL JOHNSON, *et al.*,

    Plaintiffs,

v.

CITY OF SEATTLE, *et al.*,

    Defendants.

NO. 25-cv-1874-BJR

**ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiffs brought this lawsuit against the City of Seattle, Bruce Harrell, in his official capacity as Mayor of the City, and Shon Barnes, in his official capacity as Chief of Police for the Seattle Police Department, seeking injunctive and declaratory relief and damages for alleged violations of Plaintiffs' First Amendment rights. Compl., ECF No. 1. Now pending before the Court is Plaintiffs' motion for a preliminary injunction, ECF No. 9, and Defendants' motion for partial dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 17. Having reviewed the materials[1] and the relevant legal authorities, the Court will deny Plaintiffs' motion for

---

[1] Including the Plaintiffs' motion, ECF No.9; Defendants' response in opposition, ECF No. 18; Plaintiffs' reply, ECF No. 19; Defendants' motion, ECF No. 17; Plaintiffs' response in opposition, ECF No. 22; and Defendants' reply, ECF No. 24; together with the Plaintiffs' Complaint, ECF No. 1, and attached exhibits.

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 1

a preliminary injunction, and deny Defendants' motion to dismiss Plaintiffs' Establishment Clause claim. The reasoning for the Court's decision follows.

## II.    BACKGROUND

### A.    Factual Allegations

To host an event on streets, sidewalks, or public parks in the City of Seattle, applicants are required to apply for and be granted a permit. Compl. ¶ 47 (citing Seattle Ordinance § 15.52.040). On February 5, 2025, Plaintiffs applied for a permit to host the MAYDAY USA worship event in Seattle, requesting to host the event on Pike Street in downtown Seattle for 300-500 people. *Id.* ¶ 61; *see* Ex. B, ECF No. 1-2 (emails referencing an attached "special events permit"). On February 26, 2025, Plaintiffs followed up on their permit application and were informed that "the City did not believe Plaintiffs' requested location was acceptable for the planned event," and alternative locations were suggested. *Id.* ¶¶ 65-68, Ex. B. Plaintiffs allege that they were informed that they should consider alternate locations to avoid the objections that businesses along Pike Street had to religious events in the prior year. *Id.* ¶¶ 79-80, Ex. B. Contrary to Plaintiffs' assertions, however, the referenced exhibit does not indicate any issue with the prior year's event being religious but rather states: "Some feedback our office received in 2024 included overcrowding on Pike St which led to some local businesses closing early due to patrons having challenges in accessing their businesses, placement of portajohns directly adjacent to a business's outdoor patio which led to that patio space being closed for the afternoon, and insufficient neighborhood notifications being issued." *Id.* Ex. B.

On March 7, 2025, the City informed Plaintiffs that they would not be permitted to use Pike Street and suggested some alternate locations for the proposed Mayday worship event on May 24,

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 2

2025. Compl. ¶¶ 82-83. They were referred to the Downtown Seattle Association and the Seattle Parks Department. *Id.* ¶ 83. Plaintiffs' permit application for Pike Street was officially denied on March 14, 2025, "due to the size and scope of the proposed event being too large to be safely accommodated at the proposed location." *Id.* ¶ 85, Ex. B. Plaintiffs received a permit from the Seattle Parks Department on April 8, 2025, to host an event at Cal Anderson Park. ¶ 88, Ex. C, ECF No. 1-3. The permit approved Plaintiffs to host the MAYDAY USA event, "a worship and prayer event," from 7:00 a.m. to 10:00 p.m., including the use of amplified sound at certain time periods. *Id.* ¶ 90, Ex. C.

At the event on May 24, 2025, Plaintiffs allege that although they complied with all applicable rules and laws, a large group of protestors came to the park to agitate, disrupt, and assault Plaintiffs for the views, message, and content of their event. *Id.* ¶¶ 92-93. At 3:15 p.m., shortly after the event had begun, event organizers were approached by the police and told to shut down the event because of violent protestors that the police could not control. *Id.* ¶¶ 94-97. Two protestors attacked the event's stage, ripped down the fabric banners and kicked over equipment, and other protestors exposed body parts, engaged in lewd behavior in front of minor children, threw urine-filled water balloons, sprayed attendees with pepper spray and tear gas, and harassed Plaintiffs with curse words and violent threats. *Id.* ¶¶ 99-103. Some protestors exhibited violent behavior including brandishing a weapon, and Plaintiffs were forced to evacuate their prayer tent out of fear for their safety. *Id.* ¶¶ 104-07. Even as Plaintiffs attempted to shut down the event at the behest of police, they continued to be harassed and violently threatened. *Id.* ¶¶ 108-114.

On the same day, Mayor Harrell issued a press release stating that Plaintiffs' event was an "Extreme Right-Wing Rally", and that Plaintiffs were responsible for the violence that had been perpetrated against them. Compl. ¶ 116. Plaintiffs allege that they were blamed for deliberately

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 3

provoking the reaction "by promoting beliefs that are inherently opposed to our city's values, in the heart of Seattle's most prominent LGBTQ+ neighborhood." *Id.* ¶ 117 (quoting Ex. A, ECF No. 1-1). Mayor Harrell issued another press release on May 27, 2025, which contained statements from the City's "Christian and Faith Leaders" condemning Plaintiffs for their event and blaming them for the violence perpetrated against them. *Id.* ¶ 123, Ex. D, ECF No. 1-4. According to the City's faith leaders, Plaintiffs targeted the LGBTQ+ community. *Id.* ¶¶ 124-34.

Plaintiffs allege that the City's permitting scheme is discriminatory on its face and as applied against the Plaintiffs. *Id.* ¶ 137. They allege that the termination of their event was impermissibly based on Plaintiffs' speech, expression, and religious exercise. *Id.* ¶ 144. Plaintiffs assert five causes of action: (1) Count I – Violation of the Free Speech Clause of the First Amendment to the United States Constitution; (2) Count II – Violation of the Peaceable Assembly Clause of the First Amendment to the United States Constitution; (3) Violation of the Free Exercise Clause of the First Amendment to the United States Constitution; (4) Violation of the Establishment Clause of the First Amendment to the United States Constitution; and (5) Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs seek a preliminary injunction and permanent injunction, restraining and enjoining Defendants from enforcing, the City's permitting requirements. Compl. 38-40. Plaintiffs also ask for a declaratory judgment declaring the permitting schemes are unconstitutional. *Id.* at 40.

**B.    Challenged Permitting Ordinances**

The Seattle Municipal Code Chapter 15.52 governs "Crowd Control Events," establishing the regulatory framework for permitting events in public places that require significant city resources. Plaintiff specifically challenges §§ 15.52.040, 15.52.050, 15.52.060, 15.52.070.

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 4

SMC § 15.52.040 mandates that a special event permit must be obtained for any gathering on city property expected to exceed 50 people, require substantial public services, or necessitate the temporary closure of a public waterway or street. SMC § 15.52.050 defines the powers and duties of the Special Events Committee, authorizing them to determine necessary city services, set conditions, and issue or deny permits based on objective criteria such as neighborhood impact and previous permit compliance. The Special Events Committee must consider anticipated impacts of the event, but "[c]onditions shall not be determined or issued based on the programming content of the event or message that the proposed event may convey."

Decisions regarding permit applications and the assessment of fees are handled under SMC § 15.52.060 and SMC § 15.52.070. Section 15.52.060 establishes grounds for denying a permit, such as providing false information or a failure to comply with reasonable safety conditions; notably, it carves out an exception for "spontaneous free speech events" occurring within one week of a news event, which cannot be denied solely due to insufficient processing time. Section 15.52.070 details the fee structure, which scales based on anticipated attendance and event type (e.g., sporting event vs. parade). While fees are generally required, this section presumes that political or religious activities intended for the expression of ideas are constitutionally protected, though the committee may still consider factors like commercial activity when determining if certain fees apply.

### III.  DISCUSSION

#### A.    Motion for Preliminary Injunction

Plaintiffs contend that a preliminary junction should issue because Defendants' permitting schemes unconstitutionally discriminate against Plaintiffs' viewpoint, represent unconstitutional

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 5

prior restraints that impermissibly vest Defendants and their officials with unbridled discretion, and impermissibly violate Plaintiffs' right to free speech. Pls.' Mot. 15, ECF No. 9. Defendants move for dismissal of Plaintiffs' preliminary injunction claim, asserting that Plaintiffs lack standing for injunctive relief. Defs.' Mot. 2, ECF No. 17.

### 1.    Preliminary Injunction Standard

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). Plaintiff must make a "clear showing" that: (1) he is likely to succeed on the merits; (2) in the absence of an injunction, he would likely suffer irreparable harm; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[2] The Ninth Circuit follows a "'sliding scale' approach to evaluating the first and third *Winter* elements, [where] a preliminary injunction may be granted when there are 'serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff,' so long as 'the other two elements of the *Winter* test are also met.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011)); *see also All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (referring to the original *Winter* standard and the "sliding scale" variant, the Court stated: "A party seeking a preliminary injunction must meet one of two variants of the same standard.").

---

[2] "Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 n. 5 (9th Cir. 2013). "In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir.1964)).

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 6

### 2.    Plaintiffs Lack Standing for Injunctive Relief

Defendants argue that Plaintiffs lack the requisite Article III standing to seek injunctive relief. Defs' Mot. 3. The Court shall address this issue first, because "[s]tanding is a threshold matter of jurisdiction." *LA All. for Human Rights v. Cnty. of Los Angeles*, 14 F.4th 947, 956–57 (9th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). A district court has no authority to grant relief in the form of a preliminary injunction if the party lacks standing for injunctive relief. *See id.* at 957 ("[P]laintiffs 'must demonstrate standing separately for each form of relief sought.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000))).

To demonstrate standing, plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). To seek injunctive relief, a plaintiff must allege that the injury in fact is concrete, particularized, and "actual or imminent." *Am. Encore v. Fontes*, 152 F.4th 1097, 1111 (9th Cir. 2025) (quoting *Lujan*, 504 U.S. at 560). Past injury is insufficient; the plaintiff must show that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (citations omitted). And vague allegations of an intent to apply for permits in the future "is too speculative to meet the standing requirements." *Diamond S.J. Enter., Inc. v. City of San Jose*, 100 F.4th 1059, 1066 (9th Cir. 2024). Plaintiffs "may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their [preliminary-injunction] motion to meet their burden." *City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019) (alteration in original) (quoting *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (per curiam)).

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 7

As Plaintiffs argue, in First Amendment cases such as this, relaxed standing principles apply because free expression is considered uniquely fragile, so courts permit broader access to prevent a chilling effect on speech. *American Encore*, 152 F.4th at 1113-14; *see Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033-34 (9th Cir. 2006) ("[S]pecial standing principles apply in First Amendment cases."). "A plaintiff has standing to vindicate First Amendment rights through a facial challenge when it 'argue[s] that an ordinance . . . impermissibly restricts a protected activity.'" *Diamond S.J. Enter., Inc. v. City of San Jose*, 100 F.4th 1059, 1066 (9th Cir. 2024) (quoting *Santa Monica Food Not Bombs*, 450 F.3d at 1033).

However, it remains necessary for plaintiffs to allege a credible or substantial risk that the law in question will be enforced *against them*. *American Encore*, 152 F.4th at 1114. Here, the dearth of allegations of intended future conduct, threat of future enforcement, or self-censorship, clearly does not satisfy a pre-enforcement injury in fact. *See id.* ("Nor does the mere existence of a proscriptive statute or a generalized threat of prosecution satisfy the case or controversy requirement." (citations omitted)); *see also, e.g.*, *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024) (listing three benchmarks[3] for determining whether there is "a credible threat of enforcement."); *Lopez v. Candaele*, 630 F.3d 775, 793 (9th Cir. 2010) ("Because [plaintiff] fails to establish the necessary injury in fact, he cannot raise the claims of third parties as part of an overbreadth challenge.").

---

[3] "(1) [A] plaintiff must allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) a plaintiff's intended future conduct must be 'arguably . . . proscribed by [the] statute' it wishes to challenge, and (3) the threat of future enforcement must be 'substantial.'" *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-62 (2014)).

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 8

Plaintiffs certainly have standing to pursue their other challenges and claims; Defendants do not argue otherwise. But Plaintiffs' allegations do not support a finding of the imminent injury that Article III requires for a preliminary injunction. Accordingly, the Court will deny the motion for a preliminary injunction for lack of standing.

### B.    Motion to Dismiss Establishment Clause

Defendants have also moved for dismissal of Plaintiffs' fourth cause of action, their claim under the Establishment Clause, for failure to state a claim. Defs.' Mot. 2, ECF No. 17.

### 1.    Dismissal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018). However, the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 9

### 2.      Establishment Clause Violation

Plaintiffs' Fourth Cause of Action asserts that Defendants permitting scheme violates the Establishment Clause. Compl. ¶¶ 209-19. Plaintiffs allege that on its face and as applied, the Permitting Ordinance allows Defendants to display hostility towards religious gatherings and show favoritism towards certain non-religious expressive activities. *Id.* ¶¶ 209-13. Plaintiffs also allege that the permitting scheme excessively entangles the government with religion. *Id.* ¶ 214. Defendants argue that nothing in SMC § 15.52 clearly meets the standard set forth by the Supreme Court in *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534 (2022). *Id.* at 13. Defendants also argue that Plaintiffs' claims are more appropriately brought under their Free Speech and Free Exercise challenges and have not moved to dismiss those claims. *See* Defs,' Reply 3, ECF No. 24.

The Establishment Clause prohibits governments from making any "law respecting an establishment of religion." U.S. Const. amend. I. "The clearest command of the Establishment Clause is that the government may not officially prefer one religious denomination over another." *Cath. Charities Bureau, Inc. v. Wisc. Labor & Indus. Rev. Comm'n*, 605 U.S. 238, 247 (2025) (citation omitted). Conversely, neither may the government show hostility toward religion. *See Kennedy*, 597 U.S. at 541. In *Kennedy*, the Supreme Court "instructed that the Establishment Clause must be interpreted by reference to historical practices and understandings." 597 U.S. at 535 (citations omitted). The Ninth Circuit has subsequently stated that government action that expresses hostility towards a plaintiff's religion inflicts injury to support standing for an Establishment Clause claim. *See Foothills Christian Ministries v. Johnson*, 148 F.4th 1040, 1053 (9th Cir. 2025) (citing *Kumar v. Koester*, 131 F.4th 746, 755 (9th Cir. 2025)). Courts have explained that the Establishment Clause forbids the government from being hostile to religion or preferring irreligion

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 10

over religion. *Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 966-67 (9th Cir. 2024); *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 220-22 (1963).

Plaintiffs argue that their allegations of Defendants' denial of the requested Pike Street permit because of past religious events are sufficient to demonstrate religious hostility. Pls.' Opp'n 14. But the exhibits provided with Plaintiffs' Complaint do not support their allegations that their permit application for the Pike Street venue was denied due to religious hostility, but rather "due to the size and scope of the proposed event being too large to be safely accommodated at the proposed location." Compl. Ex. B. The City recommended alternate venues, such as parks, that would be better suited, and a permit was granted for the alternate venue. *Id.* Ex. C. Plaintiffs make no allegations of non-religious events nor other religious events being granted a permit under similar constraints, which may have demonstrated expressed hostility to Plaintiffs or an expressed preference to another religion. Certainly, the Permitting Ordinance, on its face, does not contain any preference for programs that are non-religious or a denominational preference.

However, Plaintiffs also argue that the statements made by Defendant Harrell after the event was shut down are laden with hostility toward religion, and the condemning statements made by other religious sects and cited in the second press release demonstrates Defendants' preference for other religions. Pls.' Opp'n 14-15. These statements were made in formal press releases from the "Office of the Mayor." Compl. Exs. A, D. Official expressions of hostility directly connected to Plaintiffs and their event, combined with the supporting hostile statements made by City religious leaders that are officially approved by the City, can have the effect of showing that the City is failing its duty of neutrality, invalidating the facial neutrality of an ordinance. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993); *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 636 (2018).

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 11

As stated by the Supreme Court in *Kennedy*, the "Establishment Clause," the "Free Exercise Clause," and the "Free Speech Clause" appear in the same sentence of the same Amendment and have "complementary" purposes. 597 U.S. at 532-33. It remains to be seen whether Plaintiffs can prove their Establishment Clause claim, but in evaluating a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, *Interpipe* Contracting, 898 F.3d at 886-87, and the Court deems it unnecessary to dismiss Plaintiffs' Establishment Clause claim at this time while the Free Exercise and Free Speech claims proceed. Accordingly, Defendants' motion to dismiss Count IV is denied.

## IV.  CONCLUSION

For the foregoing reasons:

1.  Plaintiffs' Motion for Preliminary Injunction, ECF No. 9, is DENIED;

2.  Defendants' Partial Motion to Dismiss, ECF No. 17, is GRANTED IN PART and DENIED IN PART;

   a.  Defendants' motion to dismiss Plaintiffs' claim for injunctive relief is GRANTED;

   b.  Defendants' motion to dismiss Plaintiffs' Establishment Clause cause of action, Count IV, is DENIED;

3.  This case shall proceed pursuant to the Case Scheduling Order, ECF No. 26.

DATED this 18th day of February 2026.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
United States District Judge

ORDER RE MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

- 12